## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### Real Estate Trust and Insurance Co. (Inc.) v. Gwyn's Administratrix.

### March 14, 1912.

1. Negligence—*Last Clear Chance—When Doctrine Applicable—Concurrent Negligence.*—In order that the doctrine of the "last clear chance" may apply, it must appear that, in contemplation of the entire situation, after the danger of the plaintiff became known to the defendant, or ought to have been discovered by him by the exercise of ordinary care, he negligently failed to do something which he had a *clear chance* to do to avoid the accident. But the doctrine can have no application to a case where the negligence of both plaintiff and defendant is simultaneous and concurrent.

2. Negligence—*Emergency Self Imposed—Case at Bar.*—The doctrine of "error *in extremis*" presupposes that the party who invokes it is himself free from fault in creating the emergency. The evidence in the case at bar does not warrant the application of this doctrine.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendants appeal.

*Reversed.*

#### PLAINTIFFS' INSTRUCTIONS GIVEN.

"1. If the jury believe from the evidence that Walter B. Gwyn, while a passenger on the elevator in question, and in the exercise of a reasonable care on his part, was killed by reason of the negligence of the employee who was running the elevator, as charged in the declaration, then they must find for the plaintiff against such of the defendants as they may believe from the evidence were engaged as lessees in the actual operation of the building and the elevator in question.

"2. If the jury believe from the evidence that the elevator in question, after it had stopped at the third floor of the Dickson

43

Building, and while its switch handle was in the stop position, began to descend, without any action on the part of the elevator boy, they are instructed that such an occurrence raised a *prima facie* presumption of negligence on the part of such of the defendants as were engaged as lessees in the actual operation of the building and elevator.

"3. The court instructs the jury that such of the defendants as they may believe from the evidence were engaged as lessees in the actual operation of the building and elevator in question owed the duty to Walter B. Gwyn to exercise reasonable care to prevent injuring him by defects or faults in said elevator, its appurtenances, or the manner of its operation; and if the jury believe from the evidence that by reason of the breach of said duty said Walter B. Gwyn was killed, as averred in the declaration, they should find for the plaintiff against those defendants; unless the jury should believe from the evidence that Walter B. Gwyn was himself guilty of negligence which contributed to his death.

"4. The court instructs the jury that, so far as the defense of contributory negligence is concerned, the burden of proving such contributory negligence rests upon the defendants, unless such contributory negligence was disclosed by the plaintiff's evidence or could be fairly inferred from the circumstances.

"5. Even if the jury should believe from the evidence that Walter B. Gwyn was himself guilty of negligence in attempting to leave the elevator, such negligence on his part will not bar the plaintiff in this suit, if the jury believe from the evidence that after such negligence of Walter B. Gwyn such of the defendants as they may believe from the evidence were engaged as lessees in the actual operation of the elevator, through their servants or employees, by the exercise of reasonable care could have saved his life.

"6. If the jury find for the plaintiff, they may award such damages as to them may, from the evidence, seem fair and just, not exceeding $10,000, and they may direct in what proportion the damages shall be distributed to the widow and children of Walter B. Gwyn, deceased.

"7. If the jury find that the plaintiff is entitled to recover, they may find against those defendants who were at the time of the

accident the lessees of the Dickson Building, and engaged in the actual operation of the said building, by themselves or through their agents."

### DEFENDANTS' INSTRUCTIONS REFUSED.

"1. The court instructs the jury to find a verdict in favor of the defendants, R. A. Wainwright and Charles McI. Tunstall, no evidence of any negligence on their part having been introduced.

"2. The court instructs the jury to find a verdict for the defendants, the Real Estate Trust and Insurance Company, Incorporated, Robert A. Wainwright, and Charles McI. Tunstall, no evidence of any negligence on their part having been introduced.

"3. The court instructs the jury that if they believe from the evidence that up to the time when the plaintiff's intestate attempted to leave the elevator there had been no negligence in the operation or maintenance of the elevator in question, and that when the elevator boy saw that the said deceased, in attempting to leave the same, would be caught and greatly injured, and that, in consequence of the excitement of the moment, he adopted measures which were injudicious in the result, or failed to adopt measures which might have been more effective in preventing the accident, they are instructed that such action of his under the circumstances, would not constitute negligence.

"4. The court instructs the jury that if they believe from the evidence that when the plaintiff's intestate started to leave the elevator the car was in motion, and by so doing was killed, he was guilty of contributory negligence, and the plaintiff cannot recover in this action, and the jury must find for the defendant, even though they may believe that the defendant was guilty of negligence.

"5. The court instructs the jury that if the plaintiff's intestate attempted to leave the elevator when the door had been only partially opened, and while the elevator was moving, and by so doing he was killed, he was guilty of contributory negligence, and the plaintiff is not entitled to recover in this action, and the jury must find for the defendants, even though they may believe that the defendants were guilty of negligence.

"6. The court further instructs the jury that it was negligence on the part of the plaintiff's intestate for him to attempt to leave the elevator while the same was in motion, or when the door had been only partially opened, and if he did either, whereby he was killed, he was guilty of contributory negligence, and the jury must find for the defendants, even though they may believe that the defendants were guilty of negligence."

The following instructions, requested by the defendants, were given without modification:

"(A). The jury is instructed that the owner of the premises, who operates therein an elevator for the accommodation of the tenants of such premises and others having business therein, is bound only to the exercise of ordinary care to provide reasonably safe equipment and operation, and if they believe from the evidence that the defendants in this case exercised such care in the equipment and operation of the elevator in question they will find for the defendants.

"(B). The court instructs the jury that if they believe from the evidence that the Courtney Realty Corporation was, at the time of the accident which resulted in Mr. Gwyn's death, the lessee of record of the Dickson Building, and that, as lessee of the building, it assumed control of it, and at the time of the above accident was actually operating the building in pursuance of the assignment of the lease from R. A. Wainwright, Charles McI. Tunstall, and the Real Estate Trust and Insurance Company, Inc., to the Courtney Realty Corporation, and that the Real Estate Trust and Insurance Company was only employed and empowered to collect the rents of the building as a regular rental agent, and Wainwright and Tunstall did not control or conduct the building and elevator, then they, the jury, must find for the Real Estate Trust and Insurance Company, Inc., and R. A. Wainwright and Charles McI. Tunstall, although they may believe that the same parties are interested in both corporations, and that the same identical interests control both corporations.

The following instructions, requested by the defendants, were

given with modifications. The parts omitted by the court are in parentheses, and the additions by the court are in italics.

" (C). The court instructs the jury that if they believe from the evidence that while the plaintiff's intestate was being carried in the elevator of the Courtney Realty Corporation, in the Dickson Building, he signalled the boy in charge to lower the same to the third floor, and while the elevator was being lowered, and before it had stopped, he attempted to step from the elevator while it was in motion, and while attempting to pass out was caught by the frame of the descending elevator and killed, he was guilty of such contributory negligence as will prevent a recovery in this case, and they must find for the defendants, even though they may further believe that said defendants were also guilty of negligence, *unless the jury believe from the evidence that after the plaintiff's intestate started to leave the car while in motion (if they believe he did so) the defendants, by the exercise of ordinary care, could have prevented his death.*

" (D). The court instructs the jury that if they believe from the evidence that while the plaintiff's intestate was being carried in the elevator of the Dickson Building he signalled the boy in charge to lower the same to the third floor, and while the elevator was being lowered, and before it had been stopped and the door (entirely) opened, he attempted to step from the elevator, and, while attempting to pass out through the partially opened door, was caught by the frame of the descending elevator and killed, he was guilty of such contributory negligence as will prevent a recovery in this case, and they must find for the defendants, even though they may further believe that said defendants were guilty of negligence, *unless they further believe from the evidence that after the plaintiff's intestate started to leave the elevator car while in motion (if they believe he did so) the defendants, by the exercise of ordinary care, could have prevented his injury.*

" (E). The court instructs the jury that if they believe from the evidence that the deceased was guilty of contributory negligence, and further believe that the negligence of the deceased contributed proximately to his death, then they must find for the defendants. It is not necessary that his negligence should have caused his

death in order to defeat this action, but only necessary that it should have proximately contributed towards it. The burden of proving contributory negligence is upon the defendants, unless the same may be inferred from the evidence of the plaintiff, or all the facts and circumstances of the case. *And such contributory negligence would defeat recovery, unless the jury believe from the evidence that after the plaintiff's intestate started to leave the elevator car while in motion (if they believe he did so) the defendants, by the exercise of ordinary care, could have prevented the injury.*

"(F). You are instructed that the burden of proving the defendant guilty of negligence is on the plaintiff, unless such negligence appears from other evidence in the case; that such negligence must be proved by affirmative evidence, which must show more than a probability of a negligent act; that a verdict cannot be found on mere conjecture, and there must be affirmative and preponderating proof that the injury to the plaintiff's intestate was solely and proximately caused by some negligence of defendants for which they are legally liable. The mere occurrence of an accident raises no presumption of negligence, *unless the accident occurred as set out in instruction No. 2.*"

*Willcox, Cooke & Willcox, Johnston & Tunstall*, and *Hughes & Little*, for the plaintiff in error.

*E. R. F. Wells* and *James G. Martin*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought by Walter B. Gwyn's administratrix against the plaintiffs in error, the Real Estate Trust and Insurance Company, Incorporated, Robert A. Wainwright, Charles McIntosh Tunstall, and the Courtney Realty Corporation, to recover damages for the death of decedent, which was ascribed to the wrongful act of the defendants. To a judgment for the plaintiff for $10,000 this writ of error was granted.

Gwyn was a lawyer and real estate broker in the city of Norfolk, having an office on the third floor of the Dickson Building. On the morning of March 3, 1911, he entered the car of an electric

motor-power elevator, in use in the building, on the bottom floor, to be carried to the third floor. While attempting to leave the car at the third floor, the elevator descended below the level of the floor, and the hood or top of the car struck him on the head, and, the elevator continuing its downward course, he was caught between the hood and the sill of the floor and killed.

There are two essentially different theories propounded by the evidence as to the manner in which the accident happened. On behalf of the plaintiff, there was evidence tending to show, either that the car was stopped originally in correct position for the egress of passengers when it reached the third floor, or, having been carried past that floor, on the call of "third" by Mr. Gwyn, it descended to the third floor and stopped; that the door was opened to permit him to pass through, and as he was in the act of going out, with one foot in the elevator and one on the third floor, the car slipped, and he was struck on the head by the top of the hood of the car, and, the elevator continuing to descend, was caught between the top and the floor and killed. It will be observed that this hypothesis imputes no blame whatever to the deceased, but shows that he was the victim of the alleged negligent operation of the car by the elevator boy.

It was also proved that the spring in the lever box had been broken and removed. That was an auxiliary contrivance which operated automatically, and was intended to carry the switch handle to the stop position and stop the elevator. There was, however, evidence to the effect that the absence of the spring did not interfere with the control of the elevator, and that it had been removed three or four months prior to the accident. Some expert witnesses expressed the opinion that the elevator could be operated with greater safety without the spring than with it; that the spring was liable to create a short circuit, and cause the car to slip; so that the user or non-user of the spring was a matter of business judgment and expediency within the competency of those charged with the management of that department.

In *Arminius Chemical Company* v. *White's Adm'x*, 112 Va. 250, 71 S. E. 637, the skips in a vertical mining shaft were controlled both by hand brakes and air; and it was held that, in an emergency, the company was not liable for the action of the operator in exer-

cising the right of selection between the two appliances, either of which was shown to be reasonably safe.

The competing theory of the accident, presented by the evidence of the defendant, is that the ascending car had passed the third floor and was approaching the fourth floor, when a passenger said "fourth," whereupon Mr. Gwyn called "third," and the elevator boy reversed his lever and started down; that before they gained the level of the third floor the boy reached down and, with his right hand, swung the door partially open; that "the elevator never stopped moving at all," and, while thus slowly descending, Mr. Gwyn put his left foot out on the sill of the floor, and was holding to the sides of the door when the elevator passed from beneath his right foot, leaving him thus suspended, and while in that position he was struck on the head by the top of the descending car and caught between it and the floor sill and killed.

The plaintiffs in error assign as error the action of the court in giving, refusing, and modifying instructions.

In the light of several recent decisions of this court, we are of opinion that the doctrine of "the last clear chance" (the incorporation of which in a number of the instructions given and amended by the court is made ground of exception) is inapplicable under any view of the evidence in this case. That doctrine is, of course, predicated upon the defendants' theory that Gwyn was guilty of contributory negligence. According to that theory, the contributory negligence of the deceased commenced when he undertook to step off of an elevator while in motion, and through a partially opened door. It is true the car had to descend a distance of approximately five or six feet before he was actually caught between the top of the car and the sill of the floor; but it is also true that the car only had to travel about one foot before he was struck on the back of the head, and the top of the car remained in contact with his head until he was borne down and killed, as described by the witnesses. The catastrophe was continuous and practically instantaneous, covering only a few feet in point of distance and a few seconds in point of time. The doctrine of "the last clear chance" presupposes an appreciable difference in time between the earlier negligence of the plaintiff and the later negligence of the defendant. Moreover, it must appear

that, in contemplation of the entire situation, after the danger of the plaintiff became known to the defendant, or ought to have been discovered by him by the exercise of ordinary care, he negligently failed to do something which he had a *clear chance* to do to avoid the accident. But the doctrine can have no application to a case where the negligence of both plaintiff and defendant is simultaneous and concurrent. *Richmond Traction Co.* v. *Martin*, 102 Va. 209, 45 S. E. 886; *Consumers' Brewing Co.* v. *Doyle*, 102 Va. 399, 46 S. E. 390; *Southern Railway Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *Roanoke Railway and Elec. Co.* v. *Carroll*, 112 Va. 598, 72 S. E. 125.

Nor does the evidence warrant the application of the doctrine of "error *in extremis*," which presupposes that the party who invokes it was himself free from fault in creating the emergency.

In the other aspect of the case, we discover no sufficient evidence upon which to predicate liability so far as the defendants Robert A. Wainwright and Charles McIntosh Tunstall are personally concerned. But, under the evidence, the question of the liability of the Real Estate Trust and Insurance Company, Incorporated, and of the Courtney Realty Corporation was properly submitted to the jury upon correct instructions.

For the errors indicated, the judgment must be reversed and the case remanded for a new trial.

*Reversed.*