Staunton.

VIRGINIA AND SOUTHWESTERN RAILWAY CO. v. HILL.

September 11, 1916.

Absent, Cardwell, P.

1. MASTER AND SERVANT—*Case at Bar—Violation of Rules by Servant—Proximate Cause—Last Clear Chance—Railroads.*—The evidence in the case at bar shows that the plaintiff's injury was caused by his own violation of well known rules of the railroad company, by whom he was employed as a conductor; that the grounds of negligence alleged were not the proximate cause of his injury, and that the doctrine of the last clear chance has no application to the case.
2. NEGLIGENCE—*Self-Imposed Emergency.*—The doctrine of "error *in extremis*" presupposes that the party who invokes it is himself free from fault in creating the emergency. It does not apply to a self-imposed emergency.
3. MASTER AND SERVANT—*Violation of Rules by Servant—Damages.*—A servant injured in consequence of the violation of a rule of the master cannot recover damages from the master for an injury which the observance of the rule would have prevented. As the master is bound, at his peril, to make the rules, the servant should be equally bound, at his peril, to obey them. In such case, the servant must bear the consequences of the disaster brought upon him by his own voluntary act.

Error to a judgment of the Circuit Court of Lee county in a proceeding by motion for a judgment for damages. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Powell, Price & Simmonds, H. H. Shelton, Pennington & Pennington* and *Pennington & Cridlin,* for the plaintiff in error.

*Davidson & Robinette* and *Gilmer, Warren & Stant,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The judgment drawn in question on this writ of error was recovered by the defendant in error, W. R. Hill, against the plaintiff in error, the Virginia and Southwestern Railway Company, on motion, for personal injuries. ·

Hill was an experienced ·freight conductor, and in the capacity of yard and mine conductor had been in the service of the plaintiff. in error for four years, hauling coal from the mines in the vicinity of St. Charles, in Lee county, Virginia.

The grounds of negligence imputed to the defendant· are that it failed to use ordinary care to provide the plaintiff with reasonably safe machinery with which to work and a reasonably safe place in which to work, in this that the ·pilot on the engine was loose on the pilot-beam, and dropped down closer to the rails than was customary and proper; that it suffered a slide from the bank above to remain at the side of the track, which filled up the entire walkway; and that the roadbed in front of the engine was filled with loose rock and debris with which the engine collided, and which caused the plaintiff to fall when he jumped from a step fastened to the pilot-beam on the rail in front of the engine; and that the defendant did not exercise reasonable care to stop the engine after the plaintiff had fallen in front of it.

As the case develops it will be perceived that the first two grounds were not the proximate cause of the accident, and that the last was unsustained by the evidence.

On the morning of the day of the accident, plaintiff and his crew had taken a string of empty cars to the mine to be loaded, returning with five or six loaded cars to Turner's siding three miles from the mine. The accident occurred in the afternoon when plaintiff made a second trip with his engine and tender to haul out loaded cars. He and his two brakemen were riding on the pilot-beam in front of the engine, and as they approached the mine he descended to the small metal step attached to the beam for the purpose of taking his bill-book from his hip pocket to instruct the brakemen how many cars to cut out. While in that position, with the book up to his face, the step struck a loose rock or lump of coal. Plaintiff, in substance, testified that he feared the step, which was constructed of light material, would be jarred off, and that he would be thrown under the engine; that on account of the slide he could not step off the engine outside the rail for if he had done so he would have been rolled back under the engine and killed; that the engine was running at a low rate of speed (three or four miles an hour) and he felt that his only chance of escape and one that he could safely take, was to step off in front of the engine; that he made one step forward on the rail and his foot struck some rolling substance and he was thrown on his left side, the fall causing the accident; that the pilot was loose and hung nearer the rail than usual and his foot was caught between the pilot and the rail and crushed; and that his clothes were caught on the step and he was dragged.

The step suffered no injury from the alleged collision, and bore no marks of impact with a rock or other substance. This was the first trip the plaintiff had ever made to the mines with an engine and tender alone, and the only time he had ridden on the pilot-beam;

when cars were attached to the engine, he and his brakemen rode in the cars. He was familiar with the rules of the company, having passed an examination on the book of rules when he qualified as conductor, and knew that the rules required him and his brakemen to ride inside the cab of the engine when there were no cars, and forbade their riding on the front of the engine.

He sought to escape the consequences of his violation of the rules by the assertion that inasmuch as the brakemen were riding on the front of the engine it was also his duty to ride there to direct their movements. Again, it was said that the crew could do their work quicker and more conveniently on the outside than when riding in the cab; and yet again, that a step was missing from one side of the engine and rails were distributed along the other side of the track, which made ingress and egress to and from the cab more difficult.

The obvious answer to all these excuses is that the conductor was in command of the train and crew, and could stop when and where he pleased, and that it was his duty to observe the rules himself and likewise to enjoin obedience on his subordinates.

It was further sought to show such knowledge on the part of the officials of the company of the habitual violation of the rule by employees as to amount to a waiver or acquiescence in its nonobservance. But the evidence falls far short of requirement in that regard, and only tends to show that employees rode on the front of the engine "on the sly;" and that when caught, the officers "gave the boys a going over about it."

The importance of obedience to rules is emphasized in the case of *Southern Railway Company* v. *Johnson*, 111 Va. 495, 69 S. E. 323, Ann. Cas. 1912 A, 81. The plaintiff's own version of the accident shows that the

grounds of negligence alleged were not the proximate cause, and that the doctrine of the last clear chance is not applicable under the facts of the case. It affirmatively appears that as soon as plaintiff's peril became known, or, in the exercise of ordinary care, could have been known to the engineer and fireman, they did all in their power to save him from the consequences of his own reckless act in stepping upon the rail within two feet in front of a moving engine.

Plaintiff, moreover, invokes the doctrine of "error *in extremis*" to escape the effect of his own negligence, but that principle does not apply to a self-imposed emergency. The doctrine pre-supposes that the party who invokes it is himself free from fault in creating the emergency." *Real Estate Co.* v. *Gwyn*, 113 Va. 337, 74 S. E. 208.

At the time of the alleged emergency the plaintiff was riding on the front of the engine, in conscious violation of a rule established for his own safety; and, indeed, it would seem a strange perversion of justice to visit upon the employer the consequences of the injured employee's disobedience of such rule.

In *Kansas City, &c. Ry. Co.* v. *Francis*, 110 Mo. 387, 19 W. 935, it is said: "It would be most unreasonable and unjust after imposing upon the master the duty of promulgating a rule for securing the safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound, at his peril, to make the rules, the servant should be equally bound at his peril to obey them. In such case the disaster is brought upon the servant by his own voluntary act, and he and not the master who has discharged his duty, should bear the consequences. So it has been uniformly ruled." The de-

cisions of this court are in accord with the Missouri case, and are cited in *Southern Ry. Co.* v. *Johnson, supra.*

We are of opinion that the action of the circuit court in overruling the motion of the Virginia and Southwestern Railway Company to set aside the verdict of the jury as contrary to the law and the evidence was error for which the judgment must be reversed and annulled and the case remanded for a new trial.

This conclusion renders the consideration of secondary assignments of error unnecessary, since many of them are not likely to arise again if the case should be re-tried.

*Reversed.*