# Richmond

ELMORE M. WASH, ADMINISTRATOR, ETC. V. A. J. HOLLAND.

January 16, 1936.*

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Eggleston, JJ.

*Rehearing denied March 12, 1936.

The opinion states the case.

*T. A. Williams* and *L. C. O'Connor*, for the plaintiff in error.

*Sinnott & May, Virgil P. Randolph, Jr.,* and *J. B. Browder,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Gladys M. Wash, eight years and nine months old, while running across a highway in Hanover county, was struck and killed by an automobile driven by A. J. Holland. This action was brought by her administrator to recover damages for her alleged wrongful death. The parties will be referred to as they appeared in the court below in which there was verdict and judgment for the defendant.

The evidence on behalf of the defendant, which has been accepted by the jury, is this:

Gladys Wash lived with her grandmother, Mrs. J. Y. Williams, on the eastern side of the Richmond-Washing-

ton highway, at Atlee, in Hanover county. The Williams residence is some distance back from the road. In front of it is a hedge running parallel to, and about thirty-three feet from, the eastern edge of the hard surfaced portion of the highway.

The road is straight for several hundred feet both north and south of the entrance to the Williams home. Should the driver of a northbound automobile look in that direction, he could plainly see a person standing or moving between the hedge and the eastern side of the highway.

Each morning, at about 8:30 o'clock, it was the custom of the little girl to cross the road and catch the school bus on the western side of the highway in front of her home. This she did by proceeding along a walkway leading from the residence, through an opening in the hedge, thence down a slight embankment, over a six foot dirt shoulder and across the pavement.

At about 5:30 A. M., on October 1, 1933, in company with two friends, the defendant left his home in Nansemond county, Virginia, in a Model A, 1928 Ford sedan, to attend a world series baseball game to be played at Washington, D. C., on that afternoon. Their route was through the city of Richmond and thence northwardly along the Richmond-Washington highway. They were proceeding at from forty to forty-three miles per hour as they approached the Williams home. The school bus was then about seventy-five or one hundred yards in the distance, and approaching from the opposite direction. Just in front of it, and proceeding in the same direction as the bus, was a loaded truck.

On the western side of the highway, opposite the Williams property, were two school children waiting for the bus. About five hundred yards south of the entrance to the Williams property, and on the western side of the highway, five other children were likewise awaiting the bus. The defendant saw, but paid no particular attention to these children as they were a safe distance from the road.

When the Holland car had almost reached the entrance to the Williams home, the defendant, for the first time, saw the little girl. She was on the eastern edge of the concrete about twelve or fifteen feet ahead of his car, was running diagonally toward the western side of the road with her back to the automobile, and entirely unmindful of its approach. The defendant was then driving about two feet from the right hand edge of the pavement. Upon seeing the child on the eastern edge of the concrete, Holland cut his car sharply to the left in the effort to avoid striking her. After hesitating momentarily in the center of the road, as if to retrace her steps, the child continued on across the pavement into the path of the car and was struck and killed instantly.

The gist of the plaintiff's case is that the defendant, by the exercise of ordinary care, should have seen the child before she reached the edge of the road, since she was within the range of his vision from the time she left the hedge.

The defense is two-fold: (1) The failure of the driver in not sooner seeing the child was due to his looking out for approaching traffic; (2) The deceased was guilty of contributory negligence.

The first assignment of error is to the refusal of the court to grant "Instruction No. 4," requested by the plaintiff as follows: "The court instructs the jury that the operator of an automobile has no right to assume that a child will not attempt to cross the highway in view of or ahead of his automobile, and it is therefore the duty of the automobile driver, when he sees or should have seen, in the exercise of ordinary care, a child crossing or about to cross in front of or ahead of his automobile, to get his automobile under complete control so as to avoid injury as soon as he sees, or in the exercise of ordinary care, should have seen such child crossing or about to cross in front of or ahead of said automobile."

This instruction, in the form requested, was properly refused. It would have, in effect, made the defendant an

absolute insurer so far as the child was concerned. Under it the defendant would have been liable even though the child had darted immediately in front of the car giving the defendant no opportunity whatever to have avoided injuring her. This is what the defendant's evidence tended to show happened. It was his main defense.

The instruction should have been qualified so as to have told the jury that they should find for the plaintiff if the defendant saw, or in the exercise of ordinary care, should have seen, the child *"in time to have avoided her by the exercise of ordinary care."* Only with such or a similar qualification would it have been proper.

The next assignment of error is to the action of the court in granting "Instruction No. Y" at the request of the defendant. This instruction is as follows: "The court instructs the jury that if the defendant through no fault of his own was suddenly confronted by an emergency and was compelled to act instantly in an effort to avoid the accident, he was not guilty of negligence if he made such a choice as a person of ordinary prudence placed in such a position might have made, even though the defendant did not make the wisest choice; and whether he used reasonable care under all circumstances is a question for the jury."

It is urged in the petition that the defendant was not entitled to this instruction because his own negligence, in not sooner discovering the presence of the child, created the emergency, and that the doctrine of "error *in extremis"* does not apply to a self-imposed emergency. This principle of law is undoubtedly correct. *Real Estate Trust & Insurance Co.* v. *Gwyn's Adm'x,* 113 Va. 337, 345, 74 S. E. 208; *Virginia Electric & Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 440, 163 S. E. 329.

But the plaintiff's present objection to this instruction must fail for two reasons:

(1) While the certificate of exception shows a general objection to the granting of the instruction, no ground of such objection was stated in the court below. In fact, the

written opinion of the trial judge states that "No objection was urged when this instruction was given, the objection seems to have arisen after the trial, * * *." Rule XXII precludes our considering the objection here.

(2) But even if the exception had been properly taken in the court below, we can not say that the granting of the instruction was error. To sustain the contention of the plaintiff we must hold, as a matter of law, that the emergency was self-imposed by the defendant through his own negligence in not seeing the' child before she reached the edge of the road. This we can not do in the face of the verdict of the jury.

While the defendant admits that if he had looked in her direction he would have seen the deceased running toward the road, yet he contends that since there were no circumstances to put him on notice of her presence, his attention was properly directed to traffic ahead, and not to either side of the road. According to the testimony of the driver of the school bus, who was called as a witness for the defendant, the little girl ran rapidly down the embankment from the hedge to the road. It must have required only a couple of seconds for her to have covered the distance. Under the circumstances it was a question for the jury, and not for us, to say whether the defendant was guilty of negligence in not sooner seeing the child.

The plaintiff's view of the driver's duty and liability, in this situation, was fully presented by other instructions granted at the request of the plaintiff, particularly "Instruction No. 2," wherein it is said: "The court instructs the jury that if they believe from the evidence in this case that the defendant saw, or by keeping a vigilant lookout ahead could have seen Gladys Wash going from the east side to the west side of the Richmond-Washington highway in front of defendant's automobile in time to have prevented the injury by the exercise of ordinary care in the use of the appliances at his command, and that the

defendant failed so to do, then they must find their verdict for the plaintiff."

Furthermore, "Instruction No. Y" dealt only with the primary negligence of the defendant. Assuming that the defendant was negligent, there is ample evidence to support a finding that the deceased was guilty of concurring negligence which precludes a recovery here.

The child, being between seven and fourteen years of age, was favored by a rebuttable presumption that she could not be guilty of contributory negligence. *Morris* v. *Peyton,* 148 Va. 812, 821, 139 S. E. 500; *Filer* v. *McNair,* 158 Va. 88, 93, 163 S. E. 335. We have the testimony of two of her teachers, and that of the bus driver, that she was unusually well developed both mentally and physically, and above the average intelligence. Her capacity for being guilty of contributory negligence was a question for the jury (*Carlton* v. *Martin,* 160 Va. 149, 155, 168 S. E. 348), was submitted on an instruction granted at the plaintiff's request, and is not here questioned.

The undisputed evidence is that although the defendant's automobile was in plain view of the deceased, she ran down the embankment, across the shoulder and in the path of the car without once looking at it or heeding its approach. Whether she was guilty of contributory negligence in so doing was submitted to the jury on an instruction granted at the request of the defendant and not excepted to by the plaintiff. The verdict on that question is conclusive here.

What we have already said disposes of the remaining assignment of error that the verdict was contrary to the law and the evidence. The primary negligence of the defendant and the contributory negligence of the plaintiff were submitted to the jury under instructions to which no exceptions, other than those herein mentioned, were taken. The jury, after having heard the evidence and viewed the scene of the accident, has decided the questions adversely to the plaintiff. This verdict the trial court has sustained after a careful and painstaking re-

view of the evidence and all of the questions raised by the plaintiff in error here.

What we said through Mr. Justice Holt in *Ballard* v. *Commonwealth,* 156 Va. 980, 991, 159 S. E. 222, 225, applies here:

"We have here a jury's verdict, approved by an able and unbiased trial judge. Such a verdict should not be set aside in this court merely because, as an original proposition, we might have reached a different conclusion. We sit as an appellate court and not as a jury.

" 'The appellate court will not be justified in granting a new trial, even if its members should think that if they had been on the jury they might have found a different verdict.' *Thomas' Case,* 106 Va. 855, 56 S. E. 705; *Cobb* v. *Commonwealth,* 152 Va. [941] 953, 146 S. E. 270."

During the oral argument of the case before us it was suggested that the question of the defendant's primary negligence was tried below under the theory that the defendant owed the deceased child the same duty as he would have owed an adult in the same situation.

It is settled by this court that the duty and liability of a driver of an automobile to adults and children are measured by different standards. Ordinary care towards an adult under certain circumstances might be gross negligence towards a child under the same conditions. *Ball* v. *Witten,* 155 Va. 40, 48, 154 S. E. 547. The driver of a car must increase his exertion so as to avoid injuring a child whom he sees, or by the exercise of reasonable care should see, on or near the road. *Ball* v. *Witten,* 155 Va. 40, 46, 154 S. E. 547; *Trant, Inc.* v. *Upton,* 159 Va. 355, 367, 368, 165 S. E. 404; *Irvine* v. *Carr,* 163 Va. 662, 670, 177 S. E. 208.

But the record nowhere discloses that the plaintiff's attorney called to the attention of the trial court, by requesting appropriate instructions or otherwise, such distinction between the duty of the driver of a car towards an adult and a child. Indeed, there is no assign-

ment of error on the point. We can consider only such errors as are properly saved in the record and presented to us by appropriate assignments of error. Rule XXII; Burks' Pleading and Practice (3d Ed.), pp. 748, 749, sec. 398; *Parsons* v. *Commonwealth,* 154 Va. 832, 843, 152 S. E. 547.

The judgment must be affirmed.

*Affirmed.*

HOLT, J., dissenting.

The court erred in giving Instruction "Y."

That instruction has already been copied. It is true that the trial court in its opinion said that when given it was not objected to. This, however, is bill of exception No. 2:

"Be it remembered that after the jury was sworn to try the issues in this case, and after completion of the testimony as embodied in Bill of Exception No. 1, the court gave instructions Nos. 1, 2, 3, 5, 6 and 7 at the request of the plaintiff and Instructions No. X of its own motion, and Instructions Nos. A, B, C, D, O, E, and Y, for the defendant, and amended plaintiff's instruction No. 1, deleting the words "to give proper and timely warning of the approach of the said automobile," and refused plaintiff's instruction No. 4, to which action of the court in refusing instruction No. 4 plaintiff excepted, and to the granting at the request of defendant of Instruction No. Y, known as *delimma* instruction the plaintiff objected, and excepted, and now prays that his *bill* of exceptions Nos. 1, 2, 3 and 4 may be signed, sealed and made a part of the record in this case. It appearing in writing that the attorney for the defendant has had reasonable notice of the time and place of presenting these bills of exceptions to the court.

"(Signed) Frederick W. Coleman, Judge."

It is true that this bill of exception does not set out just what the objection was, but it is equally true that the presiding judge understood its character. He certifies that it is what is commonly known as the dilemma instruction. If he did so understand he was not taken by surprise, he was not misled. An objection which apprises the trial judge of its nature is all that Rule XXII demands. One might as well be required to elaborate an objection to an instruction which told a jury that the accused must be proven guilty beyond a reasonable doubt.

This child when peril was discovered and when the car was just upon her acted with indecision, as might have been expected, and it may be conceded a dilemma then presented itself. But the jury was left free to find that the dilemma which then confronted the defendant was brought about through no fault of his. A verdict so found would have been contrary to the evidence. Holland was himself guilty of primary negligence.

Little Gladys was running diagonally across the road that she might reach a school bus on the far side. Certainly for thirty-three feet from the roadway itself she was in plain view of the oncoming car. The day was clear, the road was straight, and there was nothing to obstruct the driver's view. He did not see her until it was too late. This is his picturesque account of the situation:

"Q. What was the first you knew of anything out of the ordinary prior to this accident?

"A. The first thing was this little girl kinder flashed on the road, just like you might see a rat."

He said that he was traveling "around forty, forty-two or forty-three miles," and that he was looking straight ahead at an oncoming truck at the time of the accident seventy-five or one hundred yards distant. The child must, therefore, have been in view when this truck was one hundred and fifty or two hundred yards away. If he did not see her he ought to have seen her. The measure of duty is in each instance the same. One cannot escape liability by failing to observe what he should have seen.

Plainly a driver is not relieved from observing all road-side conditions, particularly where children are concerned, merely because another car this far away is coming. Moreover, this was the school children's hour; Holland should have seen that they were collecting along the roadside.

It is said, however, that even if this be true and that if there is error here it is harmless error because the child was herself guilty of contributory negligence, but before that rule can in such circumstances be invoked contributory negligence must appear as a matter of law.

She was eight years old. The rebuttable presumption is that such a child was incapable of negligence. *Morris* v. *Peyton,* 148 Va. 812, 139 S. E. 500. Whether or not this presumption has been overcome is pre-eminently a jury question. *Chesapeake & Ohio Railway Co.* v. *Allen,* 137 Va. 516, 522, 120 S. E. 157; *Filer* v. *McNair,* 158 Va. 88, 163 S. E. 335.

Under Instruction "Y" the jury might have found that there was no primary negligence and no contributory negligence; it might have found that there was both primary negligence and contributory negligence; and it might have found that there was no primary negligence but contributory negligence. In any of these cases there would have been a general verdict for the defendant. Just what theory the jury did rest it upon we do not and can not know.

Putting aside the statute as to imperative instructions, can it be said that it would have been harmless error for the court to have told the jury that the defendant as a matter of law was not guilty of primary negligence? Could that error on a general verdict have been made harmless by the fact that it on a proper submission might have found that the presumption of incapacity had been over-borne and that contributory negligence had been made to appear? I think not. An instruction permitting an erroneous finding may be not less hurtful than one which requires it.

In conclusion it may be said that Instruction "Y" contains a fair statement of an abstract proposition, but it is not applicable to the facts in this case. We are dealing not with a grown woman, in full possession of her faculties, but with a child of tender years. One who sees or is charged with seeing the approach of an adult in such manner to suggest a purpose to cross a highway down which a driver is coming, has the right to assume that she will exercise ordinary care in self protection. The heedlessness of children makes it unsafe for one to indulge in such a presumption under such circumstances, where they are concerned.

Holland was in part responsible for the emergency which confronted him. For the foregoing reasons, I am constrained to dissent.

CAMPBELL, C. J., concurs in dissent.